SEP 1 1 2003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LORILLARD TOBACCO COMPANY, )
a Delaware corporation, )
)
Plaintiff, )
)
v. ) Civil Action **03C 4844**
)
) Judge
MONTROSE WHOLESALE )
CANDIES AND SUNDRIES, INC., ) Magistrate Judge **JUDGE ASPEN**
an Illinois corporation, ) **MAGISTRATE JUDGE KEYS**
a/k/a MONTROSE WHOLESALE )
) __JURY DEMANDED__
Defendant. )
)

**[FILED UNDER SEAL]**

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
APPLICATIONS FOR _EX PARTE_ SEIZURE ORDER, TEMPORARY RESTRAINING
ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER
SEALING FILE, AND ORDER EXPEDITING DISCOVERY**

## I. INTRODUCTION.

Plaintiff Lorillard Tobacco Company ("Lorillard") is one of the leading cigarette manufacturers in the United States. Lorillard's best selling brand, NEWPORT®, is the best selling menthol cigarette in the United States. Lorillard has registered its trademark NEWPORT® with the United States Patent and Trademark Office, giving Lorillard the exclusive right to manufacture, distribute, advertise and sell NEWPORT® cigarettes in the United States.

Defendant Montrose Wholesale Candies and Sundries, Inc., a/k/a, Montrose Wholesale and perhaps other associated individuals and business organizations, is selling unauthorized and illicit cigarettes that bear counterfeit imitations of the trademarks and trade dress of authentic NEWPORT® cigarettes. The counterfeit



cigarettes are being passed off by Defendant as genuine NEWPORT® cigarettes, although these illicit products have not been manufactured, sold, or otherwise approved by Lorillard. Under the Lanham Act, the Defendant's products are counterfeits.

As provided by the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and consistent with the relief ordered by many courts in similar cases, Lorillard applies to this Court for an *ex parte* seizure order to ensure that all evidence of Defendant's counterfeiting activities be preserved. Lorillard also seeks a temporary restraining order so that Defendant is ordered immediately to cease and desist from all such counterfeiting and unlawful activities.

## II.    THE PARTIES AND THE NEED FOR IMMEDIATE RELIEF.
### A.    Lorillard.

Lorillard is one of the top sellers of premium cigarettes in the United States. Lorillard's leading brand is NEWPORT®, which has become the number one menthol brand in the United States and the second most popular cigarette brand overall. Lorillard's cigarettes are manufactured in North Carolina in accordance with strict quality control standards. The cigarettes are then distributed throughout the country by a network of wholesalers and retailers, in compliance with a wide range of federal and state regulations.

In the past several years, the federal government and many states, including Illinois, have substantially increased taxes on cigarettes and other tobacco products. The revenue from these taxes has been directed to various smoking cessation programs, children's health initiatives, and other such purposes. The high level of taxation, however, has made it extremely profitable for bootleggers to import and sell cigarettes in a manner designed to evade paying the taxes that apply to everyone else.

Lorillard has obtained individual packages and/or cartons of counterfeit NEWPORT® cigarettes offered for sale by Defendant. (Declaration of Ralph Jackson ("Jackson Decl.") ¶ ¶ 2-4; Declaration of Ed O'Brien ("O'Brien Decl.") ¶ 2.) Based on an

2

inspection, Lorillard has determined that the subject cigarettes are counterfeit and were neither manufactured nor packaged by Lorillard. (O'Brien Decl.) ¶¶ 3-10.)

### B.    Defendant.

Defendant does business, including selling the counterfeit Newport® cigarettes, as Montrose Wholesale at 4419 West Montrose, Chicago, Illinois.

### C.    Urgency.

Time is of the essence because of the ongoing trademark counterfeiting. Without an *ex parte* seizure order, there would be a substantial risk that products bearing counterfeit marks, documents, and other evidence of counterfeiting activities would be moved, destroyed, or otherwise rendered unavailable. It is imperative that all evidence of Defendant's sources of the counterfeit products be preserved. Cigarettes are small items and can be easily concealed and quickly moved. Further, without a temporary restraining order and preliminary injunction, Defendant would be permitted to continue infringing Lorillard's intellectual property rights, misleading consumers as to the source and sponsorship of Defendant's products, and diluting Lorillard's hard-earned consumer recognition and goodwill. Lorillard only seeks such orders as will immediately enjoin Defendant from further infringement and will preserve all possible evidence.

## III.    LORILLARD'S TRADEMARK PROTECTION.

### A.    Trademarks are Valuable Property.

A trademark is a distinctive mark adopted and used to distinguish goods of one source from those of another. A trademark can be a word, design, symbol, or object, and it allows a consumer to identify goods as coming from a particular source. *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 162, 131 L. Ed. 2d 248, 251, 115 S. Ct. 1300, 1302-1303 (1995). Trademark law embodies important policies, including (1) consumer protection (assisting a consumer to identify and obtain preferred goods from a consistent source and preventing confusion) and (2) property owner protection (protecting the right of a merchant to profit from the goodwill associated with exclusive

3

use of his or her trademark). Trademarks are protected by both state and federal law. While not required to be registered, registration gives the public notice of an owner's rights.

### B.     Lorillard's Registered Trademarks.

Lorillard and its predecessor entities have used the NEWPORT® trademark continuously since at least 1956. Lorillard incorporates its trademarks onto its cigarettes and the packaging to identify the source of the products. Among other marks, Lorillard and its affiliated entities hold federal registrations for the marks LORILLARD®, NEWPORT®, NEWPORT® (stylized), Spinnaker Design®, and NEWPORT and Design® with the following registration information:

| Trademark | Registration No. | Goods |
|---|---|---|
| LORILLARD® | 1,920,066 | Cigarettes |
| NEWPORT® | 1,108,876 | Cigarettes |
| NEWPORT® (stylized) | 2,600,870 | Cigarettes |
| Spinnaker Design® | 1,178,413 | Cigarettes |
| NEWPORT and Design® | 1,191,816 | Cigarettes |

### C.     Lorillard is Entitled to Broad Relief Against Counterfeiters.

The distinction between "counterfeit" and "colorable imitation" is significant; the law deals more harshly with, and provides a broader range of remedies for, counterfeiting. Among other things, to combat counterfeiting, Congress has seen fit to provide for *ex parte* seizure orders. 15 U.S.C. § 1116(d). A remedy that Lorillard seeks here.

A "counterfeit" is statutorily defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. In contrast, marks which are not "identical with" or "substantially indistinguishable from" a registered mark, but which nevertheless are "colorable imitations" of a registered or unregistered mark so as to be likely to cause confusion, are considered infringing. Counterfeiting or

4

infringement of a registered mark is made actionable by 15 U.S.C. § 1114(1), and infringement of an unregistered mark is made actionable by 15 U.S.C. § 1125(a). "Counterfeiting is 'hard core' or 'first degree' trademark infringement and is the most blatant and egregious form of 'passing off.'" 4 J. Thomas McCarthy, *McCarthy on Trademarks* § 25.10, at 25-17 (2002) (*"McCarthy"*).

For purposes of the *ex parte* seizure provision of 15 U.S.C. § 1116(d) only, the definition of "counterfeit" is as follows:

> As used in this subsection the term "counterfeit mark" means (i) a counterfeit of a mark that is registered in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; ... but such term does not include any mark or designation used on or in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

According to the legislative history, this provision was intended to exclude from the definition of "counterfeit" parallel imports, gray market goods, and production overruns by authorized licensees. Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12079 (Oct. 10, 1984).

The "Newport" brand cigarettes sold by Defendant, which are not genuine Lorillard products, are counterfeit under this definition, since they were manufactured and distributed wholly without authority of Lorillard; they are not merely production overruns or gray market goods. This is consistent with precedent. For example, in *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995), the court found that Microsoft trademarks used in connection with the sale of unauthorized copies of Microsoft software were "counterfeit." *Id.* at 1088, 1092. Hence, the unauthorized "Newport" cigarettes sold by Defendant are counterfeit for purposes of 15 U.S.C. § 1116(d).

5

## IV. AN *EX PARTE* SEIZURE ORDER IS NECESSARY AND APPROPRIATE TO PRESERVE ALL EVIDENCE OF COUNTERFEITING ACTIVITIES.

### A. The Court has the Power to Grant an *Ex Parte* Seizure Order Against Counterfeiters.

In 1982 it was estimated that the cost of counterfeiting to U.S. businesses was about $5.5 billion per year. By 1996, that estimate had risen to $200 billion. Cong. Rec. H5778, June 4, 1994, Remarks of Cong. Moorehead, reprinted at 52 BNA PTCJ 184 (June 6, 1996), cited in 4 *McCarthy* § 25.10, at 25-18. *McCarthy* notes that prior to passage of the Trademark Counterfeiting Act of 1984, "traditional civil remedies proved largely ineffective against counterfeiters. The pirate or its distributor who is served with a civil summons to appear at a hearing on a preliminary injunction will either disappear or quickly dispose of existing inventory." 4 *McCarthy* § 25.10, at 25-19. Among other things, the 1984 Act created criminal penalties for counterfeiting (18 U.S.C. § 2320), provided for mandatory monetary remedies in counterfeiting cases (15 U.S.C. § 1117(b)), and granted the courts in civil cases the power to grant *ex parte* seizure orders (15 U.S.C. § 1116(d)). It is that last remedy, *ex parte* seizure, which Lorillard seeks here, in addition to the traditional temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65.

### B. The Requirements for an *Ex Parte* Seizure Order are Satisfied Here.

15 U.S.C. § 1116(d) provides for an *ex parte* seizure order on eight enumerated conditions. Where the statutory elements are satisfied, it can be an abuse of discretion to deny an *ex parte* seizure order. *Vuitton v. White*, 945 F.2d 569, 575-76 (3rd Cir. 1991). The statutory elements are: (1) the person obtaining the order provides adequate security; (2) an order other than an *ex parte* seizure is not adequate to achieve the purposes of 15 U.S.C. § 1114; (3) the applicant has not publicized the requested seizure; (4) the applicant is likely to succeed in showing the defendant used a counterfeit mark; (5) an immediate and irreparable injury will occur if such seizure is not

6

ordered; (6) the matter to be seized will be located at the place identified in the application; (7) the harm to the applicant in denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered; and (8) if the applicant were to proceed on notice to the defendant, the defendant or persons acting in concert with defendant would destroy, move, hide, or otherwise make such matter inaccessible to the court.

Each of the statutory elements is satisfied here. First, Lorillard is willing to provide adequate security to protect Defendant against monetary loss in the event of a wrongful seizure. Lorillard suggests an amount of $500 would be more than adequate.

Second, an *ex parte* seizure order is necessary to achieve the purposes of 15 U.S.C. § 1114, i.e., to preserve to Lorillard its full remedies for trademark infringement, including destruction of merchandise bearing counterfeits of Lorillard's trademarks, and recovery of lost profits and damages. *See Hunting World, Inc. v. Reboans, Inc.*, 24 U.S.P.Q.2d 1844, 1845 (N.D. Cal. 1992).

Third, Lorillard has not publicized its application for an *ex parte* seizure. (Declaration of Richard D. Harris ("Harris Decl.") ¶ 4)

Fourth, as is described above, based on the Declarations of Ralph Jackson and Ed O'Brien, Lorillard is likely to succeed in showing that Defendant has used counterfeit marks in connection with the sale, offering for sale, or distribution of cigarettes. (Jackson Decl. ¶ ¶ 2-4; O'Brien Decl. ¶¶ 2-10.)

Fifth, immediate and irreparable injury will occur if an *ex* parte seizure is not ordered. Indeed, in trademark infringement cases, and especially counterfeiting cases, irreparable injury is presumed. *See Abbot Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992); *Philip Morris v. Allen Distributors, Inc.*, 48 F.Supp.2d 844 (S.D. Ind. 1999). Lorillard has addressed the counterfeiting problem on a number of levels, for example, by implementing and enforcing company policies that withhold advertising and other assistance from any retailer found to sell counterfeit cigarettes.

Even with these other efforts in place, the seizure remedy of 15 U.S.C. § 1116 is a key component of the fight against counterfeiting at the retail and distribution levels. *Ex parte* seizure is the single most effective means by which Lorillard can obtain possession of counterfeit products, determine through discovery the source of the counterfeit goods, and hopefully develop information about the distribution channels. *Ex parte* seizure also will help to deter retailers who might otherwise be tempted to profit by retailing counterfeit cigarettes. The seizure remedy is the premier tool in the very statute intended to put some teeth in anti-counterfeiting laws.

Sixth, it is reasonably certain that counterfeit "Newport" cigarettes, as well as any relevant documents, are located at Defendant's business located at 4419 West Montrose, Chicago, Illinois

Seventh, the harm to Lorillard if the requested *ex parte* seizure were denied would far outweigh the harm to any legitimate interests of Defendant from the granting of such an order.

Eighth, if Lorillard were to be required to proceed on notice, it would be a simple matter for Defendant to move, hide, or otherwise dispose of counterfeit cigarettes and any documents that relate to the purchase or sale of such cigarettes. The incentive for Defendant to hide or dispose of the products bearing counterfeit marks and to destroy relevant documents is especially great because trademark counterfeiting is a criminal offense (18 U.S.C. § 2320) and because the activities of Defendant or its suppliers in all likelihood involve other criminal offenses as well, such as illegal importation and tax evasion. Moreover, in similar trademark counterfeiting cases, Lorillard's counsel has noted that sellers of products bearing counterfeit or infringing marks tend to move or dispose of the accused products and relevant documents upon the giving of notice, whether by cease and desist notice or by legal action. (Harris Decl. ¶ 2.) Here, movement or destruction of the counterfeit products and documentary evidence would render prosecution of the case much more difficult and would frustrate the ultimate relief

Lorillard seeks in this action. *See Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, 4-5 (2nd Cir. 1979) ("If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of 'notice,' and it is surely not what the authors of the rule either anticipated or intended."); see also 130 Cong. Rec. H12076 (Oct. 10, 1984), quoted in *McCarthy* § 30.36, at 30-74 (Congress explained the tendency of "those who deal in counterfeits ... to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.").

Finally, Lorillard has notified the United States Attorney for the Northern District of Illinois of this application, pursuant to 15 U.S.C. § 1116(d)(2). (Harris Decl. ¶ 3.) For all of these reasons, Lorillard's application for an *ex parte* seizure order should be granted.

## V. A TEMPORARY RESTRAINING ORDER IS NECESSARY TO PRESERVE EVIDENCE AND STOP DEFENDANT'S ONGOING INFRINGEMENT.

### A. The Court Should Issue a Temporary Restraining Order and Preliminary Injunction.

The purpose of a preliminary injunction is to preserve the status quo and to protect the rights of the parties pending a trial on the merits. Injunctions are specifically authorized in trademark and trade dress cases. 15 U.S.C. § 1116(a). In order to obtain a preliminary injunction, a plaintiff must show (1) some likelihood of succeeding on the merits, and (2) that there is no adequate remedy at law, resulting in irreparable harm if the preliminary injunction is denied. *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429 , 1433 (7th Cir. 1986). The court must then consider the relative harm to the non-moving party, as well as the public's interest in the matter. *Lawson*, 782 F.2d at 1433. The

court "weighs" these factors using a "sliding scale" approach, seeking to minimize the cost and risk of being mistaken. *Abbot*, 971 F.2d at 12.

**B.     Lorillard is Likely to Prevail on Its Trademark Claims.**

As described below, Lorillard has proved (1) that it is the owner of protectable marks and (2) a likelihood of consumer confusion caused by the similarity of the marks. *Philip Morris,* 48 F.Supp.2d at 854.     Lorillard is therefore likely to prevail on its trademark infringement claim.

**1.     Lorillard is the Owner of Protectable Trademarks.**

Actual use of a trademark, without more, establishes protectable trademark rights under the common law.  1 Jerome Gilson, *Trademark Protection and Practice* § 3.02(2), at 3-22 to 3-23 (1998); *Great Basin Brewing Co. v. Healdsburg Brewing Co.*, 44 U.S.P.Q.2d 1751, 1753 (D. Nev. 1997) ("[o]wnership of a trademark is established by use of the mark").  Lorillard's trademarks are protected at common law under 15 U.S.C. § 1125(a) and many of them have been registered with the United States Patent and Trademark Office, including, among others, the marks LORILLARD® and NEWPORT®. Lorillard's trademarks are arbitrary or suggestive in the context in which they are used and therefore are entitled to the broadest protection under the trademark laws. *Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 506 (9th Cir. 1991); *Nutri/System, Inc. v. Con Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir. 1987).

**2.     Defendant's Use of Lorillard's Trademarks Is Likely to Cause Confusion Concerning the Origin of the Goods.**

The next required element of proof for a federal trademark infringement claim is that the sale of counterfeit products bearing Lorillard's registered marks is likely to cause confusion, or to cause mistake, or to deceive.  15 U.S.C. § 1114(1)(a).  Indeed, the core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products. *Matrix Essentials, Inc. v. Karol*, 1992 WL 142292, *5 (N.D. Ill.).  "Likelihood of

confusion exists when customers viewing the mark would probably assume that the product ... it represents is associated with the source of a different product ... identified by a similar mark." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837 (9th Cir. 1987) (citations omitted), and includes the likelihood consumers "would be likely to believe that the infringer's products had some connection with those of the registrant." *HMH Publishing Co., Inc. v. Brincat*, 504 F.2d 713, 717 n.7 (9th Cir.), *reh'g denied* (1974).

When the goods produced or sold by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348, 204 U.S.P.Q. 808 (9th Cir. 1979); *Official Airline Guides*, 6 F.3d at 1391. When the goods are related,[1] but not competitive, several other factors are added to the calculus. In the Seventh Circuit, the analysis of the likelihood of confusion issue rests upon consideration of the following factors:

(1) similarity of the marks;

(2) proximity of the goods;

(3) the area and manner of concurrent use;

(4) types of goods and degree of care likely to be exercised by the purchaser;

(5) the strength of the mark;

(6) evidence of actual confusion; and

(7) defendant's intent in selecting the mark.

*CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677-678 (7th Cir. 2001). Further, the test is flexible, and the relative importance of each factor is case-specific. *CAE*, 267 F.3d at 678. Moreover, the Court need not find in plaintiff's favor on each of these

---

[1]    Related Goods are those "products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n.10, *quoting Standard Brands, Inc. v. Smidler*, 151 F.2d 34, 37 (CA 1 1945).

factors to support a finding of likelihood of confusion. Rather, the Court is to balance the various considerations. *Id.*

In the instant case, likelihood of confusion is easily established as Defendant's counterfeit cigarettes compete directly with Lorillard's cigarettes. Moreover, the relevant factors weigh in support of a finding that Defendant's use of Lorillard's trademarks on cigarettes creates a likelihood of consumer confusion.

### a. Lorillard's Trademarks and the Counterfeit Marks are Identical in Appearance, Sound and Meaning.

When analyzing two marks, courts determine whether the marks are similar in sight, sound, and meaning. *Sleekcraft*, 599 F.2d at 352. Defendant is using marks identical to the registered marks owned by Lorillard. There can be no question but that the counterfeit marks are similar in appearance, sound, and meaning to Lorillard's registered marks. Because the marks are identical, this factor weighs in favor of finding a likelihood of confusion. *CAE, Inc.* 267 F.3d at 678.

### b. The Goods in Question are Identical.

Both Lorillard and Defendant use the marks on cigarettes. A "strong possibility" that either party may expand his business to compete with the other will also weigh in favor of finding that the present use is infringing. *Sleekcraft*, 599 F.2d at 354. When goods are closely related, any expansion is likely to result in direct competition. *Id.* Here, Defendant's cigarettes and Lorillard's cigarettes are directly related, and therefore directly compete with each other.

c.    **The Marketing Channels are Similar.**

Both Lorillard and Defendant ultimately sell their cigarettes to consumers in the United States. Indeed, Defendant apparently sells legitimate cigarettes along with the counterfeit cigarettes at issue.

d.    **Types of Goods and Degree of Care Likely to be Exercised by the Purchaser.**

The standard for evaluating this factor is the "typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353; *Official Airline Guides*, 6 F.3d at 1393. Courts presume that buyers purchasing inexpensive products are likely to exercise less care than those buying expensive goods, "thus making confusion more likely" in the case of less expensive goods. *Brookfield Comms. V. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999). Here, cigarettes are relatively inexpensive products, thus confusion is likely.

e.    **Lorillard's Trademarks are Strong.**

Generally, the stronger a mark, the more trademark protection it receives. *Reed-Union Corp. v. Turtle Wax, Inc.*, 869 F.Supp. 1304, 1307 (N.D. Ill. 1994). Strong marks are those which are fanciful, arbitrary, or suggestive. *Reed-Union Corp.*, 869 F.Supp. at 1307-1308. Weakness of a trademark would be shown by demonstrating that the mark is meaningful in common usage or merely descriptive. *Id.* at 1308. Trademarks may be strengthened by advertising, length of time in business, public recognition, and uniqueness. *Ocean Garden*, 953 F.2d at 506.

Lorillard's trademarks are extremely strong. NEWPORT® is a well known mark used continuously since the 1950's and has been developed into the most popular brand of menthol cigarettes in the United States. The LORILLARD®, NEWPORT® and other marks are used in a fictitious, arbitrary manner and in no way describe the cigarettes. Lorillard's trademarks do not directly convey any descriptive information about cigarettes other than the consistent quality and goodwill associated with Lorillard

13

through its trademarks. Defendant cannot possibly argue they need to employ Lorillard's trademarks to describe the Defendant's cigarettes.

Lorillard has deliberately strengthened its trademarks by advertising and marketing. Lorillard has committed substantial time, money, and creativity to develop the consumer awareness and goodwill associated with its trademarks. For example, Lorillard spends millions of dollars per year in marketing and promotional activities for the NEWPORT® brand. (Declaration of Victor Lindsley ¶ 4.) Lorillard's marketing and advertising activities have included magazines and other print media, point of sale advertising, point of sale displays, and direct mail to consumers. (*Id.*)

      **f.    Actual Confusion.**

Confusion is most likely where, as here, the defendant uses a counterfeit mark. *See Microsoft Corp. v. CMOS Tech,* 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the Defendant, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety. Under these circumstances, the likelihood of consumer confusion is clear.").

      **g.    Defendant's Adoption of Marks Identical or Confusingly Similar to Lorillard's was Intentional and Deliberate.**

When one party knowingly adopts a mark similar to another's, it is presumed that the defendant will accomplish its purpose and that the public will be deceived. *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466 (4th Cir.), *cert. denied*, 519 U.S. 976, 136 L. Ed. 2d 325, 117 S. Ct. 412 (1996) ("We presume that the person who sets out to infringe on another's trademark has more brains than scruples, and will likely succeed."). There are innumerable designs and trademarks which could be used on cigarettes to identify their source or to create a brand identity. Defendant has no need to counterfeit Lorillard's trademarks other than

Defendant's desire to exploit those marks and suggest an association or affiliation between Lorillard and Defendant's products. This supports a finding of likelihood of confusion.

### C. Lorillard Will Be Irreparably Harmed Absent the Issuance of a Temporary Restraining Order and Preliminary Injunction.

A *prima facie* showing of trademark infringement establishes the presumption that the trademark owner has suffered irreparable harm for purposes of a preliminary injunction motion. *Abbot Laboratories*, 971 F.2d at 16 (7th Cir. 1992); *Philip Morris*, 48 F.Supp.2d 844 (S.D. Ind. 1999). A preliminary injunction is further supported by the difficulty in proving damages resulting from trademark infringement and dilution. *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153, 1158 (7th Cir. 1984). Injunctive relief is the remedy of choice for trademark infringement cases, as well as unfair competition cases. Broad injunctions are especially appropriate when the infringing trademark use is on similar goods or services. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1181 (9th Cir. 1988) (*citing Citibank, N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997, 1009 (N.D. Cal. 1980)). Irreparable harm also results from the difficulty of computing lost sales and, generally, plaintiff's lack of control over what members of the consuming public are likely to perceive to be plaintiff's goods. *Rent-A-Center v. Canyon Television & Appliance Rental, Inc.* 944 F.2d 597, 603 (9th Cir. 1991); *Great Basin*, 44 U.S.P.Q.2d at 1756.

### D. The Balance of Hardships Weighs in Lorillard's Favor.

Where irreparable harm is demonstrated, the balance of hardships tips in favor of the plaintiff where the injunction would not require costly changes in existing operations. 3 Jerome Gilson, *Trademark Protection and Practice* § 8.07(1)[c], at 8-152 to 8-153 (1998). A defendant who knowingly infringes another's rights "cannot complain of harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.2d 1330, 1338 (9th Cir. 1995), *cert. denied*,

516 U.S. 1145, 134 L. Ed.2d 96, 116 S. Ct. 1015 (1996) (copyright). Here, the harm to Defendant from ceasing the sale or distribution of products with counterfeit and infringing trademarks and logos is minimal compared to the dilution of the substantial value and goodwill inherent in Lorillard's trademarks.

There is nothing to preclude Defendant from selling cigarettes that do not infringe Lorillard's rights. However, preventing Defendant from continuing its counterfeiting and infringing activities cannot be a compelling hardship. The balance of hardships weighs sharply in Lorillard's favor.

## VI. UNDER THE CIRCUMSTANCES OF THIS CASE, THE BOND SHOULD NOT EXCEED $500.

Lorillard seeks only to stop the infringement of its trademarks and to preserve evidence for trial. Lorillard does not seek to interfere with any legitimate business operations. Defendant may continue selling products which do not infringe on Lorillard's rights. Accordingly, the amount of the seizure and injunction bond together should be no greater than $500.

## VII. THE CIRCUMSTANCES OF THIS CASE WARRANT EXPEDITED DISCOVERY.

It is vital that Lorillard be able to trace the sources of the products bearing the counterfeit marks before the trail grows cold. It would be detrimental and prejudicial to delay discovery. Lorillard therefore requests that the Court permit discovery to begin immediately upon service of the Summons, Complaint, and any orders issued pursuant to the instant application.

## VIII.   CONCLUSION.

Based on the foregoing, Lorillard requests that the Court issue an *ex parte*
seizure order under 15 U.S.C. § 1116(d), a temporary restraining order under Federal
Rule of Civil Procedure 65, an order to show cause why a preliminary injunction should
not issue to enjoin further infringement of Lorillard's intellectual property rights, an order
permitting expedited discovery, and an order sealing the court file.

John S. Pacocha
Kevin D. Finger
Jeffrey Mote
Cameron Nelson
Attorneys for Plaintiff
Lorillard Tobacco Company

GREENBERG TRAURIG, P.C.
77 West Wacker Drive, Suite 2500
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 (fax)

Dated:  July *14*, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORILLARD TOBACCO COMPANY,　　)
a Delaware corporation,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
MONTROSE WHOLESALE　　　　　　　)
CANDIES AND SUNDRIES, INC.,　　　　)
an Illinois corporation,　　　　　　　　　)
a/k/a MONTROSE WHOLESALE　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

Civil Action No. 03C 4844

Judge JUDGE ASPEN

Magistrate Judge MAGISTRATE JUDGE KEYS

JURY DEMANDED

**[FILED UNDER SEAL]**

**[PROPOSED]** *EX PARTE* **SEIZURE ORDER, TEMPORARY RESTRAINING
ORDER, ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION, ORDER
SEALING FILE, AND ORDER EXPEDITING DISCOVERY**

　　　　Plaintiff Lorillard Tobacco Company ("Lorillard") has applied *ex parte* for a

seizure order pursuant to 15 U.S.C. § 1116(d), a temporary restraining order, and an

order to show cause for preliminary injunction under the Lanham Act, 15 U.S.C. § 1051

*et seq.*, for the reason that Defendant Montrose Wholesale Candies and Sundries, Inc.,

a/k/a Montrose Wholesale, appear to be selling or offering for sale goods bearing a

counterfeit of Lorillard's registered trademarks.　　Having reviewed the Complaint,

pleadings, moving papers, and declarations submitted by Lorillard, the Court finds that:

　　　　(a)　　Lorillard is likely to succeed in showing that Defendant used counterfeits

of Lorillard's trademarks LORILLARD®, NEWPORT®, NEWPORT® (stylized),

Spinnaker Design®, and NEWPORT and Design®, registered on the Principal Register

in the United States Patent and Trademark Office (collectively, the "Lorillard Marks"), in

connection with the sale, offering for sale, and/or distribution of cigarettes within the United States;

(b)     The sales of such merchandise bearing a counterfeit of said Lorillard Marks will result in an immediate and irreparable injury to Lorillard if a seizure of such counterfeit merchandise and the records pertaining thereto is not ordered;

(c)     Defendant, or other persons acting in concert with the Defendant, may destroy, move, hide, or otherwise make the merchandise bearing a counterfeit of the Lorillard Marks inaccessible to the Court if Lorillard were to proceed on notice to Defendant, thus frustrating the ultimate relief Lorillard seeks in this action;

(d)     The harm to Lorillard of denying the requested *ex parte* seizure order outweighs the harm to Defendant's legitimate interests of granting such an order;

(e)     Lorillard has not published the proposed seizure order;

(f)     Lorillard has provided the United States Attorney with reasonable notice of its application for this order;

(g)     Lorillard has sufficiently identified Defendant and the location where they are likely to be holding and/or offering for sale merchandise bearing counterfeits of Lorillard's trademarks and records relating thereto; and

(h)     Entry of an order other than an *ex parte* seizure order will not adequately achieve the purposes of 15 U.S.C. § 1114 to preserve to Lorillard its remedies for trademark infringement, including destruction of merchandise bearing counterfeits of Lorillard's trademarks, and recovery of Lorillard's lost profits and damages.

Therefore, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendants shall show cause (unless they waive the right to do so) before this Court, located at _____, Chicago, Illinois, Courtroom No. ____, on ____ _____, 2003 at _____ ___.m., which date is set forth for good cause shown, or as soon thereafter as counsel can be heard, why an order should not be

2

entered granting Lorillard a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 that would:

(a)     Enjoin and restrain Defendant and any of its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, from directly or indirectly:

(i)     using any reproduction, counterfeit, copy, or colorable imitation of the Lorillard Marks in connection with the importation, sale, offering for sale, or distribution of cigarettes in the United States;

(ii)     using the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same in any manner likely to cause others to believe that Defendants' products are connected with Lorillard or are genuine Lorillard products if they are not;

(iii)     passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Lorillard merchandise as and for genuine Lorillard merchandise;

(iv)     committing any other acts calculated to cause purchasers to believe that Defendants' products are Lorillard's products;

(v)     importing, shipping, delivering, distributing, holding for sale, returning, transferring, or otherwise moving or disposing of in any manner such cigarettes falsely bearing one or more of the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same; and

(vi)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above paragraphs (i) through (v); and

(b)     Impound, in the custody of Lorillard's counsel, as substitute custodian for the Court during the pendency of this action or until further order of this Court, the

cigarettes or other items seized pursuant to the provisions of this Order hereinafter set forth; and

(c)     Order Defendant to deliver up to Lorillard's counsel for impoundment, pursuant to this Court Order, all such items or things bearing counterfeits of the Lorillard Marks remaining in their possession, custody or control as determined by the U.S. Marshal upon consultation with counsel for, or a representative of, Lorillard.

**IT IS ORDERED, ADJUDGED, AND DECREED** that, pending the hearing on Lorillard's application for a preliminary injunction, Defendant and any of its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant who receives actual notice of this Order by personal service or otherwise, are hereby temporarily restrained from (1) committing any of the acts set forth in paragraphs (i) through (vi) of the preceding section (a), and (2) other than pursuant to a discovery instrument propounded by Lorillard or an order of this Court, moving, destroying, or otherwise disposing of any goods, boxes, labels, packaging or other items or documents bearing any reproduction, counterfeit, or imitation of the Lorillard Marks, or (3) removing, destroying, or otherwise disposing of any business records or documents relating in any way to the manufacture, importation, acquisition, purchase, distribution, or sale of goods or merchandise bearing any of the Lorillard Marks or any reproduction, counterfeit, or imitation thereof.

**IT IS FURTHER ORDERED** that the temporary restraining order shall remain in effect until the date for the hearing on the order to show cause set forth above or on any such further date set by the Court.

**IT IS FURTHER ORDERED** that pursuant to 15 U.S.C. § 1116(d)(1)(A), on or before July __, 2003, any United States Marshal, his or her deputy, or any other federal, state, or local law enforcement officer, accompanied by Lorillard's counsel and/or persons acting under its supervision, is hereby directed to seize and impound forthwith:

4

(a)     All cigarettes and any other such goods or merchandise in Defendant's possession, custody, or control, bearing or intended to bear any counterfeit, copy, or substantially indistinguishable imitation of one or more of the Lorillard Marks;

(b)     All means of making any counterfeits, copies, or substantially indistinguishable designations of or for any Lorillard Marks;

(c)     All records documenting or reasonably appearing to document or relate to the manufacture, importation, purchase, sale, distribution, or receipt of any merchandise bearing any of the Lorillard Marks, or other things involved in such merchandise, and all such records and things under the control of Defendant found at:

> 4419 West Montrose
> Chicago, Illinois.

**IT IS FURTHER ORDERED** that the United States Marshal or other law enforcement officer accomplishing such seizure shall employ whatever reasonable force is necessary to enter the premises of Defendant identified above and to inspect the contents of any vehicles, containers, desks, or documents located on the premises where any potentially counterfeit items may be stored.

**IT IS FURTHER ORDERED** that Lorillard's counsel and/or persons acting under its supervision, while on Defendant's premises and inspecting the products in Defendant's possession, custody, or control, shall make a good faith determination as to whether such products are counterfeit or are genuine Lorillard products. Only products bearing a counterfeit, copy, or substantially indistinguishable imitation of one or more of the Lorillard Marks shall be seized and impounded pursuant to this Order. Genuine Lorillard products shall not be seized. If, after a good faith inspection of the products in Defendant's possession, custody, or control, Lorillard's counsel and/or persons acting under its supervision remain uncertain as to the products' authenticity, Lorillard's counsel and/or persons acting under its supervision may seize and impound such

5

products, but Lorillard must immediately replace these seized products of uncertain authenticity with an equal amount of genuine Lorillard products.

**IT IS FURTHER ORDERED** that Lorillard or its agents shall inspect all items seized, and if any items are found to be genuine products, such items are to be returned to Defendant as soon as reasonably possible, but in no event later than seven (7) court days after the date of such seizure pursuant to the terms of this Order.

**IT IS FURTHER ORDERED** that any such merchandise or means of making such merchandise or records and things seized shall be appropriately packaged to permit identification, that Defendant shall be given a receipt therefor, and such merchandise, records or things shall be impounded in the custody or control of the U.S. Marshal, unless in the U.S. Marshal's sole discretion, he prefers that it repose in the custody of Lorillard's counsel, in which event it shall repose in the custody of Lorillard's counsel, as substitute custodian for the Court, pending further order of this Court, and shall be made available for inventory or inspection by any party or its counsel during normal business hours.

**IT IS FURTHER ORDERED** that Lorillard shall post a bond by a check from Plaintiff's counsel payable to the Clerk of the Court in the amount of $_____ as security for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure, attempted seizure, or restraint hereunder.

**IT IS FURTHER ORDERED** that service of a copy of this Order, the Complaint, the Application and all supporting declarations, exhibits and memoranda of points and authorities be made upon Defendant consistent with 15 U.S.C. § 1116(d)(9) and in a manner consistent with service of process requirements in the State of Illinois, at the time of seizure. If a party is not present at the seizure, Lorillard shall, within three (3) court days after the seizure, serve any Defendant not served at the time of the seizure either personally or at their place of business or residence by leaving such document

6

with a person of at least 18 years of age or by serving any agent of Defendant authorized to receive service of process.

**IT IS FURTHER ORDERED** that Defendant's answering papers, if any, shall be filed with the Clerk of this Court and served upon the attorneys for Lorillard by delivering copies to the offices of Greenberg Traurig, P.C., 77 West Wacker Drive, Suite 2500, Chicago, Illinois 60601, Fax: (312) 456-8435, to the attention of John S. Pacocha.

**IT IS FURTHER ORDERED** that this action shall remain sealed by the Court until service on Defendant or the date for the hearing of the order to show cause, at which time the Clerk may remove the seal and secrecy order, and that Lorillard shall withhold publication of the instant Order, this action, and seizure, until the date for hearing of the order to show cause.

**IT IS FURTHER ORDERED** that, good cause having been shown, deposition and written discovery by any party herein may begin immediately.

Defendants are warned that any act by them in violation of any of the terms of this Order after proper notice to Defendant, may be considered and prosecuted as contempt of this Court.

Dated this ___ day of _____, 2003.


_____
United States District Judge



\\chi-srv01\180469v01