UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LORILLARD TOBACCO COMPANY, | ) | |
|---|---|---|
| a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 4844 |
| | ) | |
| MONTROSE WHOLESALE CANDIES AND | ) | Consolidated with |
| SUNDRIES, INC., et al., | ) | |
| | ) | No. 03 C 5311 |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Presently before us is Lorillard's Combined Motion and Memorandum for Order Holding the Hazemi Defendants in Contempt for Violating this Court's Asset Freeze Order and a Related Rule to Show Cause. We hereby grant plaintiff's motion according to the terms described below.

## BACKGROUND

On January 30, 2006, we approved Magistrate Judge Cole's Report and Recommendation (Docket No. 196.) and granted Lorillard Tobacco Company's ("Lorillard") motion for a preliminary injunction freezing Ray and Sandra Hazemis' assets. *Lorillard Tobacco Company v. Montrose Wholesale Candies & Sundries,* No. 229 (N.D. Ill. entered Jan. 30, 2006). That same afternoon, plaintiff sent a letter to the Hazemis' attorney apprising him of the asset freeze and urging counsel to ensure that his clients complied with the ruling. (Reply to Mot. for Contempt Ex. L(a).) On February 22, we entered an order, which summarized Judge Cole's findings, imposed a five

1

thousand dollar bond requirement upon plaintiff, specified that the Hazemis were "restrained and enjoined from transferring, disposing of, or secreting any money, stocks, real property or other assets[,]" and ordered the defendants to file a schedule detailing their assets and "every transaction involving the purchase, sale or other disposition of any real or personal property ... during the immediately preceding twelve (12) month period[.]" (Order Feb. 22, 2006 (Docket No. 239).)

Six days later, upon discovering that over $50,000.00 was withdrawn from Sandra Hazemi's Citibank account, Lorillard filed an emergency motion to show cause why the Hazemis should not be held in contempt for violating the asset freeze order. *Lorillard*, No. 241 (N.D. Ill. filed Feb. 28, 2006). Judge Castillo granted the motion and ordered the Hazemis to appear on March 2 "and show cause why they should not be held in contempt of Judge Aspen's January 30 [] and February 22 [] orders [and to] bring with them ... any and all assets they have withdrawn from accounts since January 30 ... [and] any and all documents relating to any and all transfers of assets they have caused since January 30 [], the date on which Judge Aspen indicated that the motion to freeze assets was granted." (Mot. for Contempt Ex. C); *Lorillard*, Nos. 242, 243 (N.D. Ill. entered Feb. 28, 2006). On March 2, defendants filed a schedule of assets and produced the withdrawn funds. (Mot. for Contempt at 6.)

In the motion now before us, plaintiff first claims that the documentation of assets and transfers of property filed with the Court on March 2, 2006 is incomplete, inaccurate, and it reveals previously undisclosed bank accounts. Next, Lorillard complains that the defendants failed to file an accounting of their expenditures for the past two months. In addition, plaintiff claims that Mrs. Hazemi violated the asset freeze order when she encumbered the family residence with a home equity line of credit and then withdrew approximately $50,000.00. Relatedly, Lorillard argues that

2

Mrs. Hazemi's loan application contradicts her previous representations (under oath) to the court regarding her ownership interest in and involvement with the Montrose Wholesale business. Lorillard also contends that the Hazemis' expenses listed in their affidavit are disproportionate to the bills they submitted. Finally, Lorillard points out that the Hazemis withdrew or transferred around $9,000.00 during the month of March without proper authorization from the court. (Mot. for Contempt at 5, 7-9, 13-16.)

In response, defense counsel attests that he informed Ray Hazemi of the asset freeze imposed on January 30 sometime between February 1 and February 23, but that neither he nor the Hazemis knew of the February 22 order until February 28. It appears as though the Hazemis base their defense on the purported ambiguity of the January 30 order ("This was a Minute Order with no specifics laid out, as to what was actually [i]nvolved.") and the Hazemis' alleged ignorance of the existence of an asset freeze. (Resp. to Mot. for Contempt Ex. B ¶¶ 3, 6, 12.) Defendants also seem to argue that they complied with the show cause order by accounting for the withdrawn funds, compiling a schedule of banks, real estate, and personal property, and by submitting Mrs. Hazemi's Citibank records. (*Id.* ¶¶ 9-11.) Defending the alleged deficiencies in the schedules, counsel claims that "plaintiff already has all of the information as to everything the Hazemis own[]" from the depositions. (*Id.* ¶ 16.) Additionally, defendants claim that they cannot return the withdrawn funds to the Citibank account or produce any additional records for the Citibank account since that account has been closed. (*Id.* ¶¶ 18-19.) Finally, their counsel justifies his clients' failure to comply with our order by stating: "As to the requirements set forth in the February 22, 2206 Order, I am not about to tell my clients that every time they buy a gallon of milk, or buy clothing for their children, they must first get the okay from this Court or from plaintiff's counsel." (*Id.* ¶¶ 21.)

3

**ANALYSIS**

Findings of contempt are either "criminal" or "civil."[1] In the instant case, the nature of the contempt charge is civil. The motion was brought by another party as part of the same suit. In addition, full due process rights were afforded the Hazemis: they had notice of the motion, an opportunity through the pleadings to know the charges against them, and an opportunity to fully participate in the process via their responsive brief. The Hazemis' defense for violating the asset freeze order is that neither defendants nor their counsel received notice of the February 22 order.

Disobedience of court orders in cases of civil contempt must be "knowing," but need not be wilful. *McDonald's Syst., Inc.,* 552 F. Supp. at 710 (citations omitted). Defendants claim that they did not receive notice of the February 22 asset freeze order until February 28 because defense counsel was out of town and the electronic notification system did not work. However, on January

---

[1] The distinction between the two lies not in the character of the action which is contumacious, but in the character of the penalty assessed. *McDonald's Syst., Inc. v. Mason*, 552 F. Supp. 707, 709 (N.D. Ill. 1982). Any act of contempt contains behavior which offends the rights of other parties (civil contempt) as well as behavior which offends the authority of the Court (criminal contempt). *Shakman v. Democratic Org. of Cook Co.*, 533 F.2d 344, 348 (7th Cir.), *cert. denied*, 429 U.S. 858, 97 S. Ct. 156 (1976) (citing *Rompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S. Ct. 492 (1911)). Therefore, the focus shifts to the penalty as a means of characterizing the contempt. If the thrust of the penalty assessed is primarily to recompense the other party and/or to coerce compliance, it is civil contempt; if the penalty seeks primarily to vindicate the power and authority of the Court, then it is criminal contempt. *Shakman*, 533 F.2d 349; *Commodity Futures Trading Comm'n v. Premex, Inc.,* 655 F.2d 779, 784 (7th Cir. 1981).

There are also certain procedural characteristics which distinguish the two types of contempt. Civil actions continue as part of the suit before the Court with no separate statutory proceedings. 3 Wright & Miller ¶ 705 (1982); 11 Wright & Miller ¶ 2960 (1973). In contrast, due process requirements in criminal contempt cases are specifically addressed by Federal Rule of Civil Procedure 42(b). Another distinction between the two forms of contempt proceedings is the standard of proof: charges in a civil contempt hearing must be proved by clear and convincing evidence whereas criminal contempt will only be imposed if the charges are proven beyond a reasonable doubt. *Commodity Futures Trading Comm'n v. Nickolaou,* No. 99 C 6425, 2000 WL 1029622, at *8 (N.D. Ill. Jul. 26, 2000); *McDonald's Syst., Inc.*, 552 F. Supp. at 710.

30, counsel received actual notice of our order approving Magistrate Judge Cole's recommendation and imposing an asset freeze on the Hazemis. Magistrate Judge Cole found that the Hazemis continuously engaged in "deception, obfuscation, shuffling of assets, and corporate looting." *Lorillard,* No. 197, slip op. at 4 (N.D. Ill. entered Nov. 08, 2005). He noted the likelihood that Mr. and Mrs. Hazemi committed perjury and that Lorillard would succeed on an alter ego theory of liability to hold the Hazemis personally liable for any corporate wrongdoings, that plaintiffs had an inadequate remedy at law and would suffer irreparable harm if we did not freeze defendants' assets, and that the balance of harms weighed in favor of granting the preliminary injunction. *Id.* at 8, 9, 12, 21, 22, 24-25, 30-35. In addition to imposing the asset freeze, our January 30 order directed plaintiff to file a draft order for our approval and instructed the parties to file memoranda on the appropriate amount of bond. *Lorillard*, No. 229 (N.D. Ill. entered Jan. 30, 2006). Confusingly, defense counsel does not deny receiving notice of our January 30 order, but he attests that he did not receive notice of our request for memoranda on bond or plaintiff's proposed draft order because the electronic filing system did not function correctly. (Resp. to Mot. for Contempt Ex. B ¶¶ 3-4.) Nonetheless, on January 30, plaintiff sent defense counsel, via facsimile and first class mail, a letter apprising him of our ruling with a copy of the order. (Reply to Mot. to Compel Ex. L.)

Lorillard filed a proposed draft order on February 10 and "served [it] electronically and by first class mail on defendant's counsel that same day." (Reply to Mot. at 3.); *see also* Lorillard, No. 235 (N.D. Ill. filed Feb. 10, 2006) (Certificate of Service). Nonetheless, defense counsel attests that he did not receive the proposed draft order. (Resp. to Mot. for Contempt ¶¶ 4-6, Ex. B ¶ 5.) Having received no objections to the proposed draft, we entered the order on February 22. That order specified the scope of the asset freeze, ordered defendants to disclose certain financial interests, and

5

provided that "[t]he Hazemi Defendants are hereby given further notice that they shall be deemed to have actual notice of the issuance and terms of this preliminary injunction and any act by them or any one of them in violation of any of the terms hereof may be considered and prosecuted as contempt of this Court." *Lorillard*, No. 239 (N.D. Ill. entered Feb. 23, 2006). Defense counsel attests that the glitch in the electronic filing system prevented him from obtaining electronic notice of our February 22 order and that he did not receive the mailed copy of our order until February 28 because he was on vacation. (Resp. to Mot. for Contempt Ex. B ¶¶ 5-7.) However, defendants were aware of our January 30 order and thus were responsible for monitoring its progress. *See McDonald's Syst., Inc.*, 552 F. Supp. at 710. Further, even if defendants only justifiably learned of the February 22 order on February 28, they fail to account for their actions in light of our January 30 order.

Mrs. Hazemi applied for the home equity loan a few days after we entered our order on January 30 freezing her assets. (Mot. for Contempt Ex. E.) She also withdrew in excess of $50,000.00 from her Citibank account less than a month after we imposed the asset freeze and days after we entered our February 22 order, which clearly specified that the Hazemis were "restrained and enjoined from transferring, disposing of, or secreting any money, stocks, real property or other assets[.]" *Lorillard,* No. 239, slip op. at 3. Further, plaintiffs contend that since February 28, the Hazemis have persisted in transferring and withdrawing assets in violation of the asset freeze order and its subsequent modifications. (Mot. for Contempt at 13, Ex. K.) The Hazemis did not respond to Lorillard's charges or explain any of the transfers, payments, and withdrawals referred to and produced as exhibits to Lorillard's motion.

Moreover, the Hazemis have no excuse for failing to comply with the order to file a complete

and accurate schedule of bank accounts, real property, and personal property. Plaintiff sent defense counsel several letters highlighting the deficiencies in the schedules and requesting that defendants supplement and correct the documents. (Mot. for Contempt Ex. D(2), (6), (8).) As plaintiff correctly observed, the schedule filed by defendants does not comply with our February 22 order. (*See* Resp. to Mot. for Contempt Ex. D.) The Hazemis failed to note the source of income for the Village Bank & Trust account and the Montrose account at LaSalle Bank. They also neglected to include the date when the Montrose account at LaSalle Bank was opened or how much money was in the Lottery Account at LaSalle Bank. In addition, defendants failed to indicate the parcel numbers for any of the real property listed and they did not include the purchase price or the source of funds for 3019 North Rose Street, Franklin Park, Illinois. Further, Mr. Hazemi did not specify how he paid for his interest in 6630 West Montrose, Chicago, Illinois and his testimony in an unrelated proceeding contradicts the disclosure regarding his ownership and the market value of the property. (Mot. to Compel Ex. G at P.5, L.12-14; P.9, L.10-20; P.14, L.8-25; P.17, L.12-15; P.27, L.3-5; P.28, L.13-25; P.29, L.1-15 (Tr. Bond Hearing, N.D. Ill. Mar. 17, 2006).) Finally, defendants did not record the location of any of the personal property identified in the schedule. They also failed to document the purchase dates, prices, the source of those funds, and/or whom else has an interest in the property for a number of items in the personal property section.

Equally troubling are inaccuracies and "new developments" in some of the Hazemis' filings. For example, Mrs. Hazemi's home equity loan application contradicts portions of the schedule, such as Mr. Hazemi's claim that he owns 100% of Montrose Wholesale. Additionally, Mrs. Hazemi's loan application renders her prior sworn submissions regarding her lack of ownership of and involvement with Montrose Wholesale suspect. Mr. Hazemi's testimony in an unrelated proceeding

7

also calls into question his claim to 50% ownership of 6630 West Montrose, Chicago, Illinois. Mr. Hazemi testified that he transferred his interest in the property to his sister in August 2005, but that she owed him money from that transaction. (Mot. to Compel Ex. G at P.5, L.12-14; P.9, L.10-20; P.14, L.8-25; P.17, L.12-15; P.27, L.3-5; P.28, L.13-25; P.29, L.1-15 (Tr. Bond Hearing, N.D. Ill. Mar. 17, 2006).) In addition to misrepresenting the status of his interest in the property, Mr. Hazemi's nondisclosure of the transfer violated our mandate to account for any disposition of property within the past twelve months. We required the Hazemis to properly document the disposition of any kind of property. Further, plaintiffs contend that documents produced in response to Judge Castillo's show cause order reveal the existence of "two new bank accounts at LaSalle Bank and Mutual Bank and Plaza Bank despite service of discovery requesting this information more than two years ago and despite the apparent repeated perjury by the Hazemis' that no such accounts existed." (Mot. for Contempt at 5, Ex. D(5).) The Hazemis failed to respond to that accusation or defend prior denials of the existence of said accounts.

Finally, the defendants cannot eschew their reporting responsibilities by claiming that they are being treated unfairly. Unfortunately, there is a long history of defendants' deceptive practices, which necessitated imposing the asset freeze. *See Lorillard,* No. 197, slip op. at 3-35. This Court has modified the asset freeze order to allow the Hazemis to withdraw certain funds so long as they document their expenditures and the need for access to the funds. *See Lorillard*, Nos. 244, 248, 249 (N.D. Ill. Apr. 18, 2006). Requiring the Hazemis to account for their expenditures on a monthly basis is neither inappropriate nor overly burdensome. While defendants claim that they no longer maintain any personal bank accounts, they still need to disclose activity in the Montrose Wholesale accounts because Lorillard sufficiently demonstrated a likelihood of success on the merits of their

alter ego theory. *See Lorillard*, No. 197, slip op. at 29-33. Our order does not require the Hazemis to get our permission before buying a gallon of milk, but it does mandate transparency and accountability. (*See* Resp. to Mot. for Contempt Ex. B (Robert Habib affidavit ¶¶ 17, 21).) Thus, the Hazemis must comply with the order to produce a monthly report with proper documentation of their expenditures. Defendants cannot unilaterally disregard our orders without being held in contempt of court.

## CONCLUSION

For the reasons set forth above, we grant Lorillard's motion and find the Hazemis in contempt.

It is hereby ordered that defendants comply with the asset freeze and refrain from any future unauthorized transfers, withdrawals, sales, purchases, or disposition of any assets in violation of our orders.

It is further ordered that defendants file with the court on or before July 17, 2006, a complete and accurate schedule of all bank accounts and financial interests, real property, and personal property and that defendants properly document any disposals (by sale, transfer, etc.) of any kind of property within the previous twelve months in accordance with the terms of our February 22, 2006 order.[2]

It is further ordered that any funds that were improperly transferred, withdrawn, or disposed

---

[2] We agree with Magistrate Judge Cole that defendants must also account for Montrose Wholesale assets along with their personal assets since the company is out of bankruptcy proceedings, there is a likelihood of success on plaintiff's alter ego theory, and the initial order contemplated an asset freeze on all of the assets within defendants' control. *Lorillard*, Nos. 248, 249 (N.D. Ill. entered on Apr. 7, 2006 and Apr. 18, 2006, respectively); *(see also* Mot. for Contempt Ex. L (Tr. of proceedings before Magistrate Judge Cole at p.4, 7, 17 (N.D. Ill. Apr. 7, 2006)). In sum, we hereby adopt Magistrate Judge Cole's recommendation that the asset freeze include Montrose Wholesale.

of since January 30 must be returned and accounted for.[3] Thus, the Hazemis must fully comply on or before July 17, 2006, with Judge Castillo's show cause order wherein he ordered defendants to provide documentary evidence of any and all unauthorized transfers of assets since January 30 order. (*See* Mot. for Contempt Ex. C.) Additionally, in accordance with our February 22 order, defendants must file with the Court and provide plaintiffs a copy of an accounting of the funds, if any, properly withdrawn pursuant to the Agreed Orders Releasing Funds on March 3 and March 23. *Lorillard*, Nos. 244, 245 (N.D. Ill. Mar. 3, 2006); *Lorillard*, Nos. 146, 147 (N.D. Ill. Mar. 23, 2006) (Case No. 03 C 05311); Tr. of proceedings before Magistrate Judge Cole p. 73-78, 80, 83, 84 (N.D. Ill. Apr. 7, 2006).

It is further ordered that defendants pay Lorillard's reasonable and necessary costs, including attorneys fees, incurred in enforcing the asset freeze order. Lorillard shall submit an accounting of its costs on or before July 17, 2006. Defendants may submit any objections on or before July 24, 2006.

We admonish defendants to comply with our orders, any future violations of our orders will result in further sanctions and any other appropriate relief. It is so ordered.

                                                MARVIN E. ASPEN
                                                United States District Judge

Dated: July 7, 2006

---

[3] Defense counsel may retain possession of the $50,000.00 Mrs. Hazemi improperly withdrew from her Citibank account or he can deposit the same into Mrs. Hazemi's account, if one exists. *(See* Mot. for Contempt Ex. L (Tr. proceedings before Magistrate Judge Cole at p.19-21).)